**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

ARCHESTER WILLIAMS,

    Plaintiff,

v.

NANCY A. BERRYHILL,
ACTING COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

Civil Action No. 18-1072 (MAS)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

    This matter comes before the Court upon Archester Williams's ("Plaintiff") appeal from the final decision of Nancy A. Berryhill, Acting Commissioner of the Social Security Administration ("Defendant" or "Commissioner"), denying Plaintiff's application for a period of disability and disability insurance benefits ("DIB") under Title II and supplemental security income benefits ("SSI") under Title XVI. The Court has jurisdiction to review this matter pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3), and reaches its decision without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the Court affirms the decision of the Administrative Law Judge ("ALJ").

**I.    BACKGROUND**

    **A.    Procedural History**

    Plaintiff filed an application for DIB and SSI on January 8, 2013, alleging disability beginning on September 20, 2012. (Administrative Record ("AR") 255-65.)[1] These claims were

---

[1] The Administrative Record is located at ECF No. 6-1 to 6-9. The Court will reference the relevant pages of the Administrative Record and will not reference the corresponding ECF citations.

denied initially on May 9, 2013, and again upon reconsideration on January 13, 2014. (*Id.* at 167-69, 193-97.) The ALJ conducted an administrative hearing on June 21, 2016, following which the ALJ issued a decision finding that Plaintiff was not disabled. (*Id.* at 16-28, 36-78.) The Appeals Council denied Plaintiff's request for review on November 30, 2017. (*Id.* at 1-4.) On January 26, 2018, Plaintiff filed an appeal to the District Court of New Jersey and the matter was assigned to the Undersigned. (ECF No. 1.) On April 13, 2018, this matter was reassigned to the Honorable Jose L. Linares, U.S.D.J. (ECF No. 4.)

Plaintiff filed his brief on July 21, 2018 (ECF No. 9), and the Commissioner filed opposition on September 4, 2018 (ECF No. 10). Plaintiff filed his reply brief on September 7, 2018. (ECF No. 11.) On November 8, 2018, this matter was reassigned from Judge Linares to the Undersigned. (ECF No. 12.)

**B.     Factual History**

Plaintiff is a fifty-two-year-old male born August 20, 1966. (AR 257.) He did not complete high school, but subsequently acquired an equivalence degree. (*Id.* at 43.) Plaintiff successively worked from the period of 1986-2009 as: an oven stripper, a security guard, a maintenance worker, and again as an oven stripper. (*Id.* at 44-50, 300-08, 453.) In 2009, Plaintiff had a seizure at work. (*Id.* at 430.) In 2009, Plaintiff had filed a claim for DIB and SSI, alleging disability beginning on September 1, 2009, due to right-shoulder dysfunction, alcohol abuse, and seizure disorder. (*Id.* at 152-62.) The previous claim was denied initially on March 23, 2011, on reconsideration on September 8, 2011, and finally by an ALJ on September 19, 2012. (*Id.*) Plaintiff's current claim for disability alleges disability beginning October 26, 2012. (*Id.* at 257-65.)

Plaintiff has received treatment for numerous conditions, including hypertension, chronic liver disease, hearing loss, left-shoulder dysfunction, right-shoulder dysfunction, seizure disorder, anxiety disorder, post-traumatic stress disorder ("PTSD"), depression, insomnia, and dementia due to seizures. (*Id.* at 311, 374-75, 416-17, 469-77, 583-84, 601-11, 615-16, 651-62, 690-91.)

2

At the hearing, Plaintiff testified that he stopped working in 2009 because he had a seizure at work and because he had injured his shoulder. (*Id.* at 50.) He testified that he attempted to return to work in 2010, but was unsuccessful because of his shoulder problems. (*Id.* at 56.) He underwent shoulder surgeries to be able to return to work. (*Id.*) Plaintiff attributed his inability to work to the pain in his shoulders, legs, toes, and his chronic insomnia. (*Id.* at 57-58.) Plaintiff indicated that he endured seizures as frequently as twice a week, but that he does not go to the doctor after experiencing seizures. (*Id.* at 59, 63.) Plaintiff testified that although he takes medication, his seizures are not well-controlled. (*Id.* at 61-62.) Plaintiff also recounted his outpatient treatment for PTSD, alcohol abuse, and insomnia. (*Id.* at 68-70.)

### C. The ALJ's Decision

On September 13, 2016, the ALJ rendered a decision. (*Id.* at 16-28.) The ALJ set forth the Social Security Administration's five-step sequential process for determining whether an individual is disabled. (*Id.* at 17-18.) At step one of the analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity ("SGA") since September 20, 2012, the alleged disability onset date. (*Id.* at 18.) At step two of the analysis, the ALJ found that Plaintiff had the severe impairments of hypertension, chronic liver disease, hearing loss (no cochlear implants), dysfunction major joints (left shoulder), major motor seizures, anxiety disorder, PTSD, depression, and organic brain syndrome (dementia secondary to seizures). (*Id.*) The ALJ also noted Plaintiff's history of treatment for alcohol abuse, but found this condition non-severe because Plaintiff had reportedly abstained from alcohol since October 2013 and because he continues to attend substance abuse support groups. (*Id.* at 19.)

At step three, the ALJ determined that none of Plaintiff's impairments or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) The ALJ then found that Plaintiff possessed the residual functional capacity ("RFC") to perform light work with numerous and detailed restrictions. (*Id.*

3

at 21.) At step four, relying on the testimony of the vocational expert ("VE") at the hearing, the ALJ found that Plaintiff is not capable of performing past relevant work. (*Id.* at 26.) The ALJ, again relying on the testimony of the VE, next determined at step five that Plaintiff's restrictions permit him to perform the requirements of representative occupations with significant numbers in the national economy, including: garment sorter, produce weigher, addresser, and cuff folder. (*Id.* at 27.) The ALJ, accordingly, found that Plaintiff is not disabled. (*Id.* at 28.)

## II. **LEGAL STANDARD**

### A. **Standard of Review**

On appeal from a final decision of the Commissioner, the district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see also* 42 U.S.C. § 1383(c)(3); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). To survive judicial review, the Commissioner's decision must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999); *Jones v. Sullivan*, 954 F.2d 125, 127-28 (3d Cir. 1991); *Daring v. Heckler*, 727 F.2d 64, 68 (3d Cir. 1984). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (quotations and citations omitted).

In reviewing the record for substantial evidence, the court "may not weigh the evidence or substitute [its own] conclusions for those of the fact-finder." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (internal quotation omitted). Even if the court would have decided differently,

4

it is bound by the ALJ's decision if it is supported by substantial evidence. *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001). The court "review[s] the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999)). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981) (internal citation omitted).

### B. Establishing Disability

In order to be eligible for entitlements under the Social Security Act, a claimant must be "unable to engage in any [SGA] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). For purposes of the statute, a claimant is disabled only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

Social Security regulations provide a five-step evaluation procedure to determine whether an individual is disabled. *See* 20 C.F.R. § 416.920(a)(4). The first step considers a claimant's work activity, if any. 20 C.F.R. § 416.920(a)(4)(i). To satisfy the first step, the claimant must establish that he has not engaged in any SGA since the onset of his alleged disability. *Id.* At the second step, the claimant must establish that he suffers from a severe impairment or "combination of impairments." 20 C.F.R. § 416.920(a)(4)(ii). The claimant bears the burden of establishing the first

5

two requirements, and failure to satisfy either automatically results in denial of benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant satisfies his burden, he proceeds to the third step. The third step of the evaluation procedure requires the claimant to provide evidence that his impairment is equal to one of those impairments listed in Appendix 1 of the regulations. 20 C.F.R. § 416.920(a)(4)(iii). If the claimant demonstrates that he suffers from a listed impairment or that his severe impairment is equal to a listed impairment, he is presumed disabled and is automatically entitled to benefits. *Id.* If his claim falls short, the eligibility analysis proceeds to step four.

The fourth step of the analysis requires the ALJ to determine whether the claimant's RFC permits him to resume his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). "A claimant's RFC measures the most he can do despite his limitations." *Zirnsak*, 777 F.3d at 611 (quoting 20 C.F.R. § 404.1545(a)(1)). If the Commissioner determines that the claimant cannot resume his past relevant work, the burden presumptively shifts to the Commissioner to show "the existence of other available work that the claimant is capable of performing." *Zirnsak*, 777 F.3d at 612 (citations omitted). The Commissioner must show at step five that "given [the] claimant's age, education, and work experience, he or she can still perform specific jobs that exist in the national economy." *Podedworny v. Harris*, 745 F.2d 210, 217 (3d Cir. 1984) (citing *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979)); *see also* 20 C.F.R. § 404.1560. At this step, whether a claimant will receive benefits depends on the Commissioner's finding that the claimant is unable to perform work available in sufficient numbers in the national economy. *Zirnsak*, 777 F.3d at 612.

### III. **DISCUSSION**

Based on the Court's review of the ALJ's decision and the extensive record in the present case, the Court finds good cause to affirm the ALJ's findings. Notably, in reaching a decision, an

ALJ must choose between conflicting medical evidence in the record.[2] Here, the ALJ provided sufficient analysis for the Court to affirm her findings that: (1) Plaintiff's conditions did not meet or equal requirements under the Listing of Impairments at step three; (2) Plaintiff retained the RFC to perform a modified range of light work; and (3) Plaintiff was able to perform certain jobs found in significant numbers in the national economy at step five.

### A. Step Three: Listed Impairments

In her decision, the ALJ considered each potential impairment and stated why Plaintiff falls short of meeting the requirements under medical listings §§ 1.02 (major joint dysfunction), 2.10 (hearing loss), 4.12 (peripheral arterial disease), 5.05 (chronic liver disease), and 11.02 (epilepsy). See 20 C.F.R. pt. 404, sbpt. P, app'x 1. Plaintiff contests as conclusory the ALJ's findings regarding § 1.02 of the physical impairments and §§ 12.02, 12.04 of the mental impairments. (Pl.'s Mov. Br. 19, ECF No. 9.) In support, Plaintiff cites *Burnett v. Commissioner of Social Security* and *Fargnoli*, both distinguishable from the instant action. 220 F.3d 112 (3d Cir. 2000); 247 F.3d 34 (3d Cir. 2001). In *Burnett*, the ALJ delivered a single sentence summary conclusion as her entire step three analysis and neglected to select or weigh the possibility of application to specific impairments, as the ALJ did in this case. *Burnett*, 220 F.3d at 119. The decision in *Fargnoli* turned on the lack of discussion at step four, therefore *Fargnoli* is also distinguishable from the present case. *Fargnoli*, 247 F.3d at 40. Here, the ALJ's step three analysis is sufficient because she singled out specific provisions of the List of Impairments and discussed why Plaintiff's conditions did not

---

[2] "We are . . . cognizant that when the medical testimony or conclusions are conflicting, the ALJ is not only entitled but required to choose between them." *Cotter*, 642 F.2d at 705. "[T]he ALJ is free to accept some medical evidence and reject other evidence, provided that he [or she] provides an explanation for discrediting the rejected evidence." *Zirnsak*, 777 F.3d at 614 (citations omitted). "State agent opinions merit significant consideration as well." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (citations omitted). The Third Circuit is clear that when performing a review of an ALJ's decision, this Court "must not substitute [its] own judgment for that of the fact finder." *Zirnsak*, 777 F.3d at 611 (citing *Rutherford*, 399 F.3d at 552).

satisfy the applicable listings. (AR 19-21.) While the record demonstrates both left and right shoulder dysfunction under § 1.02B, bilateral joint dysfunction in the upper extremities is not the only requirement under § 1.02B. 20 C.F.R. § 1.02B, pt. 404, sbpt. P, app'x 1. To satisfy § 1.02B, Plaintiff also must show that his shoulder dysfunctions result in inability to perform fine and gross movements effectively. *Id.* at § 1.02B. This inability is not demonstrated in the medical record, as the ALJ stated. (AR 19.) Plaintiff has also failed to demonstrate ankle dysfunction rising to the level of gross anatomical deformity supported by medical evidence under § 1.02A. *Id.* at § 1.02A.

Regarding the ALJ's §§ 12.02 (organic mental disorders), 12.06 (anxiety disorders), and 12.09 (substance addiction disorders) determinations,[3] Plaintiff asserts that the ALJ's discussion of Plaintiff's mental impairments in relation to the paragraph B criteria was inadequate and against the weight of the evidence in reference to §§ 12.02 and 12.06. 20 C.F.R. §§ 12.02, 12.06, pt. 404, sbpt. P, app'x 1. (Pl.'s Moving Br. 22.) The paragraph B criteria require that a claimant's mental impairments result in marked difficulties in maintaining two or more of the following categories: daily living; social functioning; concentration, persistence or pace; and repeated episodes of decompensation. 20 C.F.R. § 12.00, pt. 404, sbpt. P, app'x 1. While Plaintiff takes issue with the ALJ's application of the paragraph B criteria, the regulations explicitly instruct application of paragraph B in evaluation of mental impairments. *Id.* Additionally, the ALJ considered paragraph C criteria when required under regulation, as in § 12.02. *Id.* Though Plaintiff is correct that the ALJ does not discuss the paragraph A requirements, the Court finds this to be harmless, because

---

[3] Plaintiff incorrectly cites § 12.04, possibly referencing the ALJ's § 12.06 consideration, in his brief. (Pl.'s Moving Br. 21.) The ALJ states in her decision that she considered §§ 12.02, 12.06 and 12.09 under the listed impairments. 20 C.F.R. 404, subpart P, app'x 1.

8

the result is such that paragraph A satisfaction is taken for granted when the ALJ moves on to evaluation of the paragraph B or paragraph C criteria.[4]

Contrary to Plaintiff's assertions, the ALJ's findings are supported by the substantial record evidence cited in the ALJ's decision. (AR 19-21.) The ALJ reasonably relied on Plaintiff's explicit statements about what keeps him from working in reaching a determination as to whether Plaintiff was severely restricted in his activities of daily living. (AR 20, 57-58.) In finding that Plaintiff is moderately restricted in social functioning, the ALJ relied on both Plaintiff's subjective complaints as reported to physicians and afforded special weight to medical opinions of examining physicians that Plaintiff is a cooperative patient. (*Id.* at 20, 453-56, 619, 639, 641.) She also considered Plaintiff's statements that he sometimes attends church functions. (*Id.* at 20, 319.) In finding that Plaintiff has moderate difficulties in the area of concentration, persistence or pace, the ALJ relied on physicians' determinations that Plaintiff's mental processes and ability to concentrate are mostly normal. (*Id.* at 20, 453-56, 619, 639, 641.) In addition, the ALJ relied on Dr. Kim Arrington's report in finding no history of episodes of decompensation. (*Id.* at 20, 453-56.) Here, the ALJ's decision contained an adequate discussion of the record evidence and the ALJ's

---

[4] The regulation provides:
> Each listing, except 12.05 and 12.09, consists of a statement describing the disorder(s) addressed by the listing, paragraph A criteria (a set of medical findings), and paragraph B criteria (a set of impairment-related functional limitations). There are additional functional criteria (paragraph C criteria) in 12.02, 12.03, 12.04, and 12.06, discussed herein. We will assess the paragraph B criteria before we apply the paragraph C criteria. We will assess the paragraph C criteria only if we find that the paragraph B criteria are not satisfied. We will find that you have a listed impairment if the diagnostic description in the introductory paragraph and the criteria of both paragraphs A and B (or A and C, when appropriate) of the listed impairment are satisfied.

*Id.* at § 12.00A. Because the ALJ assumed supportive medical evidence existed to satisfy paragraph A by reaching paragraphs B or C, the ALJ's lack of discussion regarding paragraph A evidence is harmless to Plaintiff.

reasoning was sufficiently detailed at step three. The Court, consequently, finds that the ALJ's step three determination was supported by substantial evidence. *See Richardson*, 402 U.S. at 401.

**B.    RFC Determination**

An ALJ decides a claimant's RFC just prior to the determination at step four. "[RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her impairments." *Fargnoli*, 247 F.3d at 40 (3d Cir. 2001) (quoting *Burnett*, 220 F.3d at 121 (3d Cir. 2000) (internal quotations omitted); *see also* 20 C.F.R. § 404.1545(a).

Plaintiff appeals the ALJ's findings and the weight afforded to psychiatrist Dr. Mundassery's opinion. (Pl.'s Moving Br. 24-27.) Plaintiff argues that the ALJ's reliance on Dr. Mundassery's conclusion that Plaintiff's impairments have lasted for over thirty years is inadequate because the weight of the record supports Dr. Mundassery's opinion. (*Id.* at 26.) Plaintiff, however, misstates the standard. What matters to this Court on review of the ALJ's decision is not whether Dr. Mundassery's opinion is supported by other opinions, but whether the ALJ's decision is supported by substantial evidence in the record. The ALJ must, and did, decide between conflicting medical evidence and explain the weight given to it when medical opinions differed. (AR 24); *Cotter*, 642 F.2d at 705.

Additionally, Dr. Mundassery's report is clear. (AR 615-17.) She believes that Plaintiff has marked or extreme limitations, but that Plaintiff has suffered these limitations for thirty years or more. (*Id.*) As the ALJ stated, a finding that Plaintiff bears extreme or marked limitations but that he maintained a factory job for many years is internally inconsistent. (AR 24.) The ALJ, therefore, sought to reconcile Dr. Mundassery's opinions with her findings. (*Id.* at 20, 615-17.) The ALJ did not rely entirely on the statements of Dr. Mundassery; she appropriately considered progress notes from Oaks Integrated Care, Dr. Kim Arrington, and state physicians in structuring the RFC findings. (AR 24-26.) She limited the full range of light work available to Plaintiff as the work Plaintiff could reasonably perform, supported by medical opinions in the record. (*Id.*)

10

### C. Step Five: Other Available Work

Plaintiff argues that because the ALJ's RFC determination at step four was not supported by substantial evidence, the ALJ's step five findings were necessarily flawed. (Pl.'s Moving Br. 27.) Plaintiff also argues that the VE's testimony is ill-founded, and that the ALJ erred in relying on it. (*Id.* at 28-29.) Plaintiff's own statistical submissions, however, serve to verify the VE's testimony. (*Id.* at 30-33.) In fact, Plaintiff's figures demonstrate a higher incidence of national availability for three out of the four job titles the VE cited. (*Id.*)

Finally, Plaintiff cites *Biestek v. Berryhill*, a case for which the United States Supreme Court granted certiorari. (*Id.* at 35); *Biestek v. Berryhill*, 880 F.3d 778 (6th Cir. 2017), *cert. granted*, 138 S. Ct. 2677 (2018). *Biestek* will decide "whether a [VE's] testimony can constitute substantial evidence of 'other work'" at step five. (*Id.*) Plaintiff concedes, however, that *Biestek* and the instant case are factually dissimilar. (*Id.*) In *Biestek*, "counsel extensively questioned the [VE] at the hearing and the [VE] declined to provide underlying data . . ." (Def.'s Moving Br. 19 n.8, ECF No. 10.) In the present case, Plaintiff's counsel declined to cross examine the VE. (AR 76.) This case, accordingly, is clearly distinguishable from *Biestek*. The Court has carefully considered the record and finds that the ALJ did not err in relying on VE testimony. The Court, consequently, finds good cause to affirm the ALJ's step five determination.

### IV. CONCLUSION

For the foregoing reasons, the decision of the ALJ is affirmed. An Order consistent with this Memorandum Opinion will be entered.

s/ Michael A. Shipp<br>
**MICHAEL A. SHIPP**<br>
**UNITED STATES DISTRICT JUDGE**

Dated: March 29, 2019